TEITLER & TEITLER
John M. Teitler (JT-3111)
Nicholas W. Lobenthal  (NL-1451)
1114 Avenue of the Americas
New York, NY  10036
(212) 997-4400
Attorneys for Plaintiff One Communications Corp.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
STOKHOLDER REPRESENTATIVE COMMITTEE,
on behalf of certain former
stockholders of Lightship
Holding, Inc.,

              Plaintiff,

   -v-

ONE COMMUNICATIONS CORP., as successor
in interest to CTC COMMUNICATIONS
GROUP, INC.,

              Defendant,

   -and-

MELLON INVESTOR SERVICES, LLC,

             Nominal Defendant.
------------------------------------------x

**07 CIV 5440**

**NOTICE OF REMOVAL**

[Stamp: RECEIVED JUN 0 8 2007 U.S.D.C. S.D. N.Y. CASHIERS]

To:    The Honorable Judges of the United States District
       Court for the Southern District of New York

Copy To:  Jayne S. Robinson, Esq.
          Robinson & McDonald LLP
          61 Broadway, Suite 1415
          New York, New York 10006
          Attorneys for Plaintiff
          Stockholder Representative Committee, on behalf of
          certain former stockholders of Lightship Holding, Inc.

Copy To:  Nicholas J. Panarella, Esq.
          Kelley Drye & Warren LLP
          101 Park Avenue

>New York, NY 10178-0002
>Attorneys for Nominal Defendant
>Mellon Investor Services, LLC

Copy To: New York County Clerk of the Supreme Court
Supreme Court of the State of New York
60 Centre Street
New York, NY 10007

Defendant One Communications Corp., by its attorneys Teitler & Teitler, respectfully gives notice of removal of the above entitled action from Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

1. On April 30, 2007, an action was commenced in the Supreme Court of the State of New York, County of New York, by the filing of a Summons and Complaint entitled "Stockholder Representative Committee, on behalf of certain former stockholders of Lightship Holding, Inc., Plaintiff, v. One Communications Corp., as successor in interest to CTC Communications Group, Inc., Defendant, and Mellon Investor Services LLC, Nominal Defendant".

2. On May 15, 2007, Defendant One Communications Corp. was served with the Summons and Complaint in the above-entitled action by delivery of a copy of the Summons and Complaint to the Secretary of State of the State of New York in the City of Albany, New York, agent for service of process of Defendant One Communications Corp.

3. Copies of the Summons and Complaint, constituting all

of the pleadings and papers served or purportedly served, on Defendant One Communications Corp. are attached to this Notice of Removal as Exhibit 1.

4. There have been no further proceedings in this action in the Supreme Court of the State of New York, County of New York.

5. The above-entitled action is a civil action that arises out of the acquisition of Lightship Holding, Inc. by CTC Communications Corp., the predecessor-in-interest to Defendant One Communications Corp. Prior to the commencement of this action, Defendant One Communications provided to Plaintiff notice of certain claims against an escrow fund for, inter alia, violations of federal securities laws relating to the acquisition of Lightship Holding, Inc.[1] Plaintiff's Complaint seeks, inter alia, a declaration that Defendant One Communication's federal securities laws claims and other claims against Plaintiff are without merit and further seeks a distribution of the escrow fund to Plaintiff. The Complaint alleges that on November 17, 2006, Defendant's predecessor-in-interest CTC "purported to give notice of a further claim for indemnification in the amount of $20 million" arising from, inter alia, "'violations of federal

---

[1] Defendant One Communications Corp.'s federal securities law claims are set forth in the Complaint filed in Civil Action No. 07 Civ. 3905 (Judge Swain) pending before this Court, which asserts, inter alia, violations of 15 U.S.C. § 78j(b), 17 CFR § 240.10b-5 and 15 U.S.C. § 78t.

3

securities laws, arising from misrepresentations, omissions, and the intentional effort to obscure from Acquirer material facts associated with what Acquirer later learned were Lightship Telecom LLC's ("Lightship") wrongful and illegal business practices in Maine, New Hampshire and Vermont.'" Complaint at ¶ 26. Plaintiff's Complaint seeks a determination, inter alia, that these federal securities law claims and other claims lack merit. Complaint at ¶ 39. Plaintiff's complaint requests relief that is necessarily dependant upon the resolution of a substantive question of federal securities law in that a determination of the merits of federal securities law claims is an essential element of at least one of the claims of Plaintiff's Complaint.

6. This Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. §1331, and the action may therefore be removed to this Court pursuant to 28 U.S.C. §1441(b).

7. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all other claims in the State Court action.

8. This notice is being filed with this Court within thirty (30) days after service on One Communications Corp., the removing party, of the Summons and Complaint in the above-entitled action.

4

9. A true and correct copy of this Notice of Removal and the Exhibit hereto is being served this date on Plaintiff's counsel of record and on Nominal Defendant Mellon Investor Services LLC's counsel.

10. A true and correct copy of this Notice of Removal and the Exhibit hereto is being filed this date with the New York County Clerk of the Supreme Court of the State of New York.

Wherefore, Defendant One Communications Corp. respectfully requests that the above-entitled action be removed from the Supreme Court for the State of New York County of New York to this Court.

Dated: New York, New York
       June 8, 2007

                        TEITLER & TEITLER

By: _____
    John M. Teitler (JT-3111)
    Nicholas W. Lobenthal (NL-1451)

1114 Avenue of the Americas
New York, NY 10036
Tel. (212) 997-4400

Attorneys for Defendant
One Communications Corp.

**Exhibit 1**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
STOCKHOLDER REPRESENTATIVE COMMITTEE,
on behalf of certain former stockholders of
Lightship Holding, Inc.,

              Plaintiff,

-against-

ONE COMMUNICATIONS CORP., as successor in
interest to CTC COMMUNICATIONS GROUP, INC.,

              Defendant,

-and-

MELLON INVESTOR SERVICES LLC,

              Nominal Defendant.
------------------------------------------------------------x

Index No. 601421-07

SUMMONS

Date Index
No. Purchased:



FILED BY DLS, INC.
APR 3 0 2007
800-443-1058

To the above named Defendants:

    You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is a provision fixing venue in the contract at issue.

Dated: April 27, 2007

                                ROBINSON & McDONALD LLP

                                By: _____
                                Jayne S. Robinson
                                61 Broadway, Suite 1415
                                New York, New York 10006
                                Tel.: (212) 953-3400
                                  Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

---------------------------------------x

STOCKHOLDER REPRESENTATIVE COMMITTEE,
on behalf of certain former stockholders of
Lightship Holding, Inc.,

                  Plaintiff,

-against-

ONE COMMUNICATIONS CORP., as successor in
interest to CTC COMMUNICATIONS GROUP, INC.,

                  Defendant,

-and-

MELLON INVESTOR SERVICES LLC,

                  Nominal Defendant.

---------------------------------------x

Index No.

COMPLAINT

Plaintiff Stockholder Representative Committee, by its undersigned attorneys, for its complaint alleges upon knowledge as to itself and its own activities and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action arises out of the acquisition of Lightship Holding, Inc. ("Lightship") by defendant CTC Communications Group, Inc., now known as One Communications Corp. ("CTC"). Plaintiff Stockholder Representative Committee (the "Committee") acts for certain of Lightship's former stockholders (the "Stockholders"), who are entitled to the release from an indemnification escrow of millions of dollars of the purchase price paid by CTC. Defendant CTC has wrongfully prevented the escrow agent, nominal defendant

Mellon Investor Services LLC ("Mellon" or the "Escrow Agent"), from releasing the Stockholders' money to the Committee by asserting purported claims for indemnification that are meritless, undocumented, and not made in good faith, all in breach of the various agreements between the parties.

2. In this action, the Committee seeks damages for breach of contract, a declaration of its rights to the escrow and an order directing release of the escrow.

### FACTS COMMON TO ALL CLAIMS

3. Plaintiff Committee was constituted and appointed by certain of Lightship's former Stockholders to act as their agent, representative and attorney-in-fact in connection with Lightship's acquisition by CTC (the "Acquisition"). The Committee has full power and authority to act for the Stockholders in connection with the various agreements accomplishing the Acquisition, in particular, an Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), and an Indemnification Escrow Agreement, dated as of May 20, 2005 (the "Indemnification Escrow Agreement"). In the Merger Agreement, CTC agreed to the appointment, powers and authority of the Committee.

4. In connection with the Acquisition, the Stockholders took on certain indemnification obligations to CTC, and $7 million of the purchase price for Lightship was placed in an escrow account (the "Indemnification Escrow") held by Mellon to satisfy any bona fide indemnification claims that arose after the Acquisition.

5. The Lightship Acquisition closed on May 20, 2005. Subject to the payment of CTC's legitimate claims for indemnification, if any, the Indemnification Escrow was to be released to the Committee in three tranches: $2 million on November 20, 2005; $3 million

2

on November 20, 2006; and the final $2 million on May 20, 2008. <u>None</u> of the Escrow has been released to date.

The Indemnification

6.  In the Merger Agreement, the Lightship Stockholders agreed to "indemnify, defend and hold harmless" CTC against "Losses" arising from inaccuracies in or breaches of the representations, warranties, covenants, obligations or agreements contained in the Merger Agreement or other agreements in connection with the Acquisition, subject to the specific terms and conditions set forth in the Merger Agreement and the Indemnification Escrow Agreement (the "Indemnification"). "Losses" are defined as

> all Actions, injunctions, judgments, determinations, orders, decrees, writs, rulings, charges, damages, dues, penalties, sanctions, fines, costs, expenses, amounts paid in settlement, Liabilities, obligations, Taxes, Liens, and losses, including court costs and attorneys' fees and expenses; *provided, however,* that the term "Losses" shall not include, or shall otherwise be reduced by the following: (i) any amount that a Person seeking recovery for Losses receives under any insurance policy on account of such Losses, (ii) the amount of any net Tax benefit to the Claimant from the deduction of such Losses, (iii) Losses that are indirect, unforeseeable, consequential, special, collateral, or incidental; and (iv) lost profits, lost savings, punitive damages, impairment of goodwill or any other diminution in value of any intangible asset.

7.  The Indemnification covers CTC only for third party claims against it, and does not apply to or cover CTC for claims <u>inter se</u>, that is, claims by CTC against the Stockholders.

8.  Under the Merger Agreement and the Indemnification Escrow Agreement, CTC may give the Committee and the Escrow Agent notice of a claim for indemnification in two circumstances: (1) where CTC "becomes aware of the facts, condition or event that may give rise to Losses for which indemnification may be sought;" and (2) where an action is actually commenced against CTC by a third party.

9. The Indemnification Escrow Agreement prescribes the contents of the notice that must be given in either circumstance. Among other things, the notice must include supporting documents and other information and a certification that the allegation of indemnified Losses is bona fide and in good faith:

> Section 4. <u>Contents of Notice of Claim</u>. Each Notice of Claim shall contain the following information:
>
> (a) a statement that a CTC Indemnified Party has incurred or paid or, in good faith, reasonably believes it shall have to incur or pay, Losses (as defined in the Merger Agreement) in an aggregate stated amount (where practicable) arising from such Claim (which statement shall include, if known by the CTC Indemnified Party on whose behalf the Claim is being made, the amount of damages claimed by such third party in an action brought against any CTC Indemnified Party based on alleged facts, which if true, would give rise to liability for Losses to such CTC Indemnified Party); and
>
> (b) a written notice setting forth in reasonable detail the basis for the alleged Losses (which written notice shall be accompanied by relevant supporting documents and other information and shall certify that such allegation of Losses is bona fide and in good faith). Following delivery of the Notice of Claim (or at the same time if the Acquirer so elects) the Acquirer shall deliver copies of any demand or complaint, the amount of Losses, the date each such item was incurred or paid, or the basis for such anticipated liability and the specific nature of the breach to which such item is related.

10. In circumstances where CTC gives notice of the "facts, condition or event" that may give rise to an indemnifiable Loss but the third party has not yet commenced an action, the Committee is entitled to make a reasonable investigation and request further information to substantiate the claim, which CTC is required to provide. If the Committee accepts the claim, CTC is entitled to be paid out of the Indemnification Escrow.

11. In circumstances where the third party has already commenced an action against CTC, a host of procedures regarding investigation, defense, settlement and the like are prescribed.

4

12. If a bona fide indemnification claim has not been "definitively resolved" at the time a portion of the Indemnification Escrow is to be released to the Committee, the amount of the claim is to be held back from the amount to be released from the Indemnification Escrow.

13. The Indemnification is subject to a number of other terms, conditions, exceptions and limitations, all as set forth in the Merger Agreement and the Indemnification Escrow Agreement.

The Purported October 2005
Indemnification Claims

14. In October 2005 -- one month before the first $2 million of the Indemnification Escrow was to be released to the Committee -- CTC purported to give notice to the Committee and the Escrow Agent that it had "incurred or paid or, in good faith, reasonably believes that it will have to incur or pay, Losses (as defined in the Merger Agreement) in an aggregate amount equal to $3,315,415.90 arising from the Claims described herein" (the "October 2005 Claims").

15. As a result of the purported October 2005 Claims, no funds were released to the Committee from the Indemnification Escrow in November 2005.

16. As was its right under the Merger Agreement and the Indemnification Escrow Agreement, the Committee requested that CTC provide appropriate documentation and information to substantiate the October 2005 Claims. CTC has failed adequately to document and support a number of the items comprising the October 2005 Claims.

17. For example, the largest single claim item asserted by CTC in October 2005 was for $2,288,725. CTC ultimately admitted that this claim was "high and should be reduced to an amount of approximately $785,134."

18. CTC has failed adequately to document or support even the "reduced" amount of this purported claim item.

19. No third party has ever brought an action or otherwise made a claim against CTC for the "reduced" or any other amount with respect to this claim item and, accordingly, CTC has never suffered a "Loss" for which indemnification is required with respect to this item of the October 2005 Claims.

20. CTC's inflated, undocumented and ultimately meritless claim item caused Mellon not to release from the Indemnification Escrow approximately $1.3 million of the Stockholders' funds in November 2005.

21. Similarly, the second highest claim item asserted by CTC in October 2005, in the amount of $500,000, was subsequently reduced by half as well. CTC's inflated and undocumented claim item caused Mellon not to release from the Indemnification Escrow an additional $250,000 of the Stockholders' funds in November 2005.

22. In all, the Stockholders should have received over $1.5 million from the Indemnification Escrow on November 20, 2005.

23. CTC's failure to comply with the Merger Agreement and the Indemnification Escrow Agreement rendered its purported notice of the October 2005 Claims null and void and of no force and effect.

The Purported November
2006 Indemnification Claim

24. On November 20, 2006, the second tranche of the Indemnification Escrow, in the amount of $3 million, was to be released to the Committee.

6

25. As noted above, prior to November 2006 CTC had reduced its purported October 2005 Claims by more than half: from $3,315,415 to $1,500,051. That $1.5 million set of claims was subject to various exclusions and limitations set forth in the Merger Agreement totaling over $400,000. Thus, even assuming *arguendo* that CTC had been entitled to indemnification for <u>all</u> of the claims it had asserted in October 2005 at the reduced amounts it had subsequently acknowledged, the Stockholders should nonetheless have received approximately $1 million in November 2005 and $3 million in November 2006, or a total of $4 million from the Indemnification Escrow by November 20, 2006.

26. Instead, <u>three days</u> before the Indemnification Escrow release date, on November 17, 2006, CTC purported to give notice of a further claim for indemnification in the amount of <u>$20 million</u> (the "November 2006 Claim"):

> Acquirer has incurred, and in good faith reasonably believes that it will in the future incur, Losses (as defined in the Merger Agreement) in an amount that exceeds $20,000,000.00. These losses arise from, and are proximately caused by, tortious conduct, conduct constituting breach of contract, and violations of federal securities laws, arising from misrepresentations, omissions, and the intentional effort to obscure from Acquirer material facts associated with what Acquirer later learned were Lightship Telecom LLC's ("Lightship") wrongful and illegal business practices in Maine, New Hampshire and Vermont . . . .

27. No third party has ever brought an action or otherwise made a claim against CTC for the matters asserted in the November 2006 Claim, all of which are without merit.

28. Despite the Committee's repeated requests, CTC has failed and refused to provide documents and information adequate to substantiate the validity and amount of the November 2006 Claim.

7

29. The November 2006 Claim is based in substantial part on matters for which CTC is not entitled to Indemnification, insofar as it purports to be a direct claim by CTC.

30. CTC's failure to comply with the Merger Agreement and the Indemnification Escrow Agreement rendered its purported notice of the November 2006 Claim null and void and of no force and effect.

31. Moreover, the representations and warranties purportedly at issue in the November 2006 Claim (and in the largest of the October 2005 Claims) expired, per the express terms of the Merger Agreement, without any third party having commenced an action or even made a claim against CTC about the subject matter of those representations and warranties. Accordingly, CTC is not entitled to Indemnification with respect to those matters.

32. In sum, CTC has wrongfully prevented the release from the Indemnification Escrow of more than $4.5 million of the Stockholders' funds to date on the basis of purported indemnification claims that are without merit, that CTC failed adequately to document and substantiate, and that were brought in bad faith, all in breach of CTC's obligations under the Merger Agreement and the Indemnification Escrow Agreement.

### FIRST CAUSE OF ACTION

33. The allegations of paragraphs 1 through 32 are repeated and realleged as though fully set forth herein.

34. With respect to the October 2005 Claims, CTC breached its obligations under the Merger Agreement and the Indemnification Escrow Agreement by, among other things, certifying and submitting purported claims for indemnification that were materially inflated, unsupported by relevant documentation and other information and otherwise unsubstantiated in material part.

8

35. CTC further breached its obligations under the Merger Agreement and the Indemnification Escrow Agreement in that the largest single item included in the October 2005 Claims, accounting for almost 70% of the dollar amount of those Claims, never formed the basis of any claim against CTC by a third party and otherwise lacked merit.

36. As a result of the foregoing, CTC wrongfully prevented the release to the Committee of over $1.5 million from the Indemnification Escrow on November 20, 2005.

37. Accordingly, CTC is liable to the Committee for damages with respect to the October 2005 Claims in an amount to be proved at trial, believed to exceed $1.5 million as of November 20, 2005, together with interest thereon at the New York statutory rate of nine percent from November 20, 2005.

## SECOND CAUSE OF ACTION

38. The allegations of paragraphs 1 through 37 are repeated and realleged as though fully set forth herein.

39. With respect to the November 2006 Claim, CTC breached its obligations under the Merger Agreement and the Indemnification Escrow Agreement by, among other things, certifying and submitting a purported claim for indemnification that lacked merit, that was not, in fact, covered by the Indemnification, and that was materially inflated, unsupported by relevant documentation and other information and otherwise unsubstantiated.

40. CTC further breached its obligations under the Merger Agreement and the Indemnification Escrow Agreement in that no third party has ever made claim against CTC for any of the matters set forth in November 2006 Claim.

41. As a result of the foregoing, CTC wrongfully prevented the release to Committee of an additional $3 million from the Indemnification Escrow on November 20, 2006.

42.  Accordingly, CTC is liable to the Committee for damages with respect to the November 2006 Claim in an amount to be proved at trial, believed to exceed $3 million as of November 20, 2006, together with interest thereon at the New York statutory rate of nine percent from November 20, 2006.

### THIRD CAUSE OF ACTION

43. The allegations of paragraphs 1 through 42 are repeated and realleged as though fully set forth herein.

44. There is a dispute between the Committee and CTC as to their respective rights and obligations under the Merger Agreement and the Indemnification Escrow Agreement with respect to the Indemnification and the Indemnification Escrow.

45. Accordingly, the Committee seeks a declaration that it was and is entitled to payments from the Indemnification Escrow (a) on November 20, 2005 in an amount to be proved at trial, believed to exceed $1.5 million, (b) on November 20, 2006 in an amount to be proved at trial, believed to exceed $3 million, and (c) on May 20, 2008 in an amount to be proved at trial, believed to exceed $2 million.

### FOURTH CAUSE OF ACTION

46. The allegations of paragraphs 1 through 45 are repeated and realleged as though fully set forth herein.

47. Under the Indemnification Escrow Agreement, in the absence of joint written instructions from CTC and the Committee, the Escrow Agent is authorized to release the Indemnification Escrow to the Committee when required to do so "by a final order rendered by a court of competent jurisdiction."

10

48.   Accordingly, the Committee is entitled to an order directing nominal defendant Mellon, as Escrow Agent, to release to the Committee from the Indemnification Escrow an amount to be proved at trial, believed to exceed $4.5 million currently and $6.5 million as of May 20, 2008.

WHEREFORE, the Committee demands judgment as follows:

(1)   On its First Cause of Action, awarding damages against defendant CTC in an amount to be proved at trial, believed to exceed $1.5 million as of November 20, 2005;

(2)   On its Second Cause of Action, awarding damages against defendant CTC in an amount to be proved at trial, believed to exceed $3 million as of November 20, 2006 and $5 million as of May 20, 2008;

(3)   On its Third Cause of Action, for a judgment declaring that the Committee was and is entitled to payments from the Indemnification Escrow (a) on November 20, 2005 in an amount to be proved at trial, believed to exceed $1.5 million, (b) on November 20, 2006 in an amount to be proved at trial, believed to exceed $3 million, and (c) on May 20, 2008 in an amount to be proved at trial, believed to exceed $2 million; and

(4)   On its Fourth Cause of Action, for a order directing nominal defendant Mellon, as Escrow Agent, to release to the Committee from the Indemnification Escrow an amount to be proved at trial, believed to exceed $4.5 million currently and $6.5 million as of May 20, 2008;

11

together with pre- and post-judgment interest, the costs and expenses of this action, and such

other and further relief as the Court deems just and proper.

Dated: New York, New York
April 27, 2007

                                       ROBINSON & MCDONALD LLP

                                       By _____
                                           Jayne S. Robinson

                                       61 Broadway
                                       New York, New York 10006
                                       212-953-3888

                                       Attorneys for Plaintiff
                                       Stockholder Representative Committee