# ATTACHMENT 1

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

## Charles Edward Ramos

Index Number : 603280/2006

VERIZON NEW YORK

vs

CHOICE ONE COMMUNICATIONS

Sequence Number : 001

DISMISS

PART **53**

| | |
|---|---|
| INDEX NO. | |
| MOTION DATE | |
| MOTION SEQ. NO. | 01 |
| MOTION CAL. NO. | |

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

**Cross-Motion:** ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion

*Is decided in accordance with accompanying memorandum decision and order.*

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE

FOR THE FOLLOWING REASON(S):

Dated: 12/21/07

HON. CHARLES E. RAMOS
J.S.C.



Check one: ☐ FINAL DISPOSITION ☑ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

**Charles Edward Ramos**                                          **53**

PRESENT: _____                          PART 53

                                    *Justice*

*Verizon*

                                                    INDEX NO. _____

                                                    MOTION DATE _____

        - v -                                       MOTION SEQ. NO. _02_____

*Choice One*                                         MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                                | PAPERS NUMBERED |
| --- | --- |
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits … | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

Cross-Motion:  ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION IN MOTION SEQUENCE · 01 · ·

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _____ 1/20/07          _____
                                     HON. CHARLES E. RAMOS

Check one:  ☐ FINAL DISPOSITION    ☑ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST    ☑ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:COMMERCIAL DIVISION
----------------------------------------X
VERIZON NEW YORK INC.,

            Plaintiff,

                              Index No. 603280/06

    -against-

CHOICE ONE COMMUNICATIONS OF
NEW YORK, INC.,

            Defendant.
----------------------------------------X

**Charles Edward Ramos, J.S.C.:**

    In Mot. Seq. 001, defendant, Choice One Communications of
New York Inc. ("Choice One"), moves to dismiss plaintiff, Verizon
New York's ("Verizon New York"), complaint pursuant to CPLR
3211(a)(2), for lack of subject matter jurisdiction or in the
alternative, CPLR 3211(a)(7), for failure to state a cause of
action due to Verizon's failure to exhaust necessary
administrative remedies.

    Verizon New York is a corporation organized under New York
law, with its principal place of business at 140 West Street, New
York, New York.  Its principal business is to provide
telecommunications services to business and residential customers
in New York.

    Choice One is a corporation organized under Delaware law,
with its principal place of business at 100 Chestnut Street,
Suite 600, Rochester, New York.  Among other things, Choice One
provides telecommunications services to residential and business
customers in New York.

    Verizon New York brought this action against Choice One for
breach of contract and unjust enrichment resulting from an

alleged failure by Choice One to repay to Verizon New York the
overpayments Verizon New York made.  Verizon New York alleges
that it overpaid under the original Interconnection Agreement
("ICA") compared to the lower amounts that should be due pursuant
to a renegotiated agreement, as provided for in the true-up
provision[1] contained in the original ICA.  Verizon New York is
seeking approximately $17 million in damages including $12.2
million in alleged overpayments Verizon New York paid Choice One
between April 1, 2003 and September 23, 2005, and approximately
$4.8 million in interest.

## Background

    Verizon New York and Choice One are both telecommunications
providers, and under the Telecommunications Act of 1996 ("TCA"),
Verizon New York is an Incumbent Local Exchange Carrier ("ILEC")
and Choice One is a Competitive Local Exchange Carrier ("CLEC").
*see* 47 USC §§ 153(26) and 251(h).  The TCA requires that ILEC's
and CLEC's interconnect their networks in order to facilitate
internetwork calling. 47 USC §251(a)(1).  To facilitate
interconnection, ILECs and CLECs can enter into interconnection
agreements which establish the terms, conditions, and prices for
services provided by the ILEC to the CLEC.  Alternatively, the
TCA permits a CLEC to opt into, and adopt, an ICA which is
already in existence between an ILEC and some other CLEC, *see* 47

---

    [1]  "[A]ny other terms and conditions of this Agreement shall
be trued up to conform with the Arbitration decision back to the
date of expiration of the term. (Interconnection Agreement by and
between [Verizon] and [Choice One] §21.1.3)("Interconnection
Agreement").

USC §252(i)[2].

On November 27, 2001, Choice One opted into an existing ICA between Verizon New York and Cablevision Lightpath, Inc., pursuant to §252(i) of the TCA. The ICA expired on April 1, 2003, but it contained an evergreen provision[3] which stated that the terms and conditions of the agreement shall continue in full force, if Choice One renegotiates the agreement either at its option, nine months prior to the expiration of the Term of the agreement, or at the request of Verizon.[4]

On August 26, 2002, Choice One timely requested renegotiation of the ICA, consistent with the requirements of section 21.1.1. The request triggered a 25 day window, beginning 135 days after Choice One's request and ending on the 160th day after Choice One's request, for either party to request binding arbitration by the New York Public Service Commission ("NY PSC"),

---

[2]  "A local exchange carrier shall make available any interconnection, service, or network element provided under an agreement approved under this section to which it is a party to any other requesting telecommunications carrier upon the same terms and conditions at those provided in the agreement." 47 USC §252(i).

[3]  "The terms and conditions of this Agreement shall only continue in full effect until the effective date of the Commission's decision pursuant to any petition filed under 21.1.2 above ("the arbitration decision") if [Choice One] requests to renegotiate pursuant to Section 21.1.1 above..." (Interconnection Agreement §21.1.3).

[4]  "[Choice One] shall, at [Verizon's] request or (ii) may, at its option, nine months prior to the expiration of the Term, make a request to [Verizon] to renegotiate the terms of this Agreement pursuant to Section 25(c)(1) of the Act..." (*Id.* §21.1.1).

3

pursuant to 42 USC §252(b)(1)[5].  Neither Verizon New York nor

Choice One requested any such binding arbitration while the

statutory window was open.

Verizon New York alleges that by October 2004, Choice One

had still not entered into negotiations despite repeated

requests.  Subsequently, the parties began to negotiate but were

unable to resolve the issues on the table.  On April 29, 2005,

Verizon New York filed a petition for arbitration with the NY

PSC, pursuant to 47 USC §252(b)(1), seeking to resolve disputes

that arose during its negotiations with Choice One.  Choice One

actively and voluntarily participated in the proceedings before

the NY PSC, prior to Choice One's election, on July 13, 2005, of

interconnecting with Verizon New York via a tariff instead of an

ICA.  On September 23, 2005, the NY PSC issued a decision on

Verizon's petition ("NY PSC Order"), and found that Choice One

did have a right to interconnect via Verizon's tariff, and

therefore all outstanding arbitration issues with regards to

negotiations on a new contract were rendered moot.

In October 2005, Verizon New York filed a petition with the

NY PSC for reconsideration of the NY PSC Order.  The petition

also requested a ruling on whether the NY PSC Order triggered the

ICA's "true up" provision.  After nearly eleven months without a

---

[5]  "During the period from the 135th to the 160th day
(inclusive) after the date on which an incumbent local exchange
carrier receives a request for negotiation under this section,
the carrier or any other party to the negotiation may petition a
State commission to arbitrate any open issues." 47 USC
§252(b)(1).

ruling from the state commission, Verizon New York withdrew its petition, and on September 25, 2006, Verizon New York filed its complaint in this Court.

Subsequently, Choice One, on October 19, 2006, removed this case to federal court asserting federal question jurisdiction, pursuant to 28 USC §1331, because the contract was an interconnection agreement entered into pursuant to the TCA, a federal statute.

Choice One then moved to dismiss Verizon New York's complaint for failure to state a claim. ("[S]ection 252(e)(6) of Title 47 of the United States Code prevents Verizon from bringing suit in federal court until it first obtains a ruling from the New York Public Service Commission.") *Verizon New York Inc. v Choice One Communications of New York, Inc.*, 499 F Supp 2d 326, 327 (SDNY Mar. 27, 2000) ("Verizon II").

The District Court held that "this Court does not have subject matter jurisdiction over Verizon New York's complaint which alleges, in essence, state law claims that do not explicitly or implicitly refer to, incorporate, or reference any provision of federal law." *Id*. at 328.  The District Court did not adjudicate the exhaustion claim for lack of subject matter of jurisdiction and remanded the case back to New York State Supreme Court.

Choice One contends that all disputes concerning ICAs may not be heard by state courts because all such disputes must be initially filed with the relevant state public utility

commission, in this case the NY PSC, and then if there is a
disagreement with the PSC determination then the complaint must
go to federal court. ("This complaint must be dismissed because
the scheme Congress created in the Federal Act for resolving
disputes over ICAs precludes any role for state courts in
adjudicating ICA interpretation disputes, regardless of whether
[the New York PUC] has made an initial determination in the
matter.") (Choice One's Memorandum of Law in Support of Motion to
Dismiss at 10) ("Choice One Memo)"; ("[T]his action must be
dismissed because Verizon failed to bring this dispute - as
required by statute and relevant case law – before the NY PSC.")
(Choice One Memo at 16).

This motion raises the issue of whether the silence of the
TCA on who shall interpret ICAs after they have been approved or
disproved by public service commissions, pursuant to 42 USC §252,
precludes state courts from adjudicating disputes that arise
under these agreements.

Choice One has failed to identify a legal or factual basis
for the theory that the statutory scheme of the TCA leaves no
role for state courts in adjudicating ICA disputes, thereby
stripping this Court of its jurisdiction or, in the alternative,
that Verizon must exhaust its remedies before coming to this
Court. Therefore both branches of Choice One's motion to dismiss
are denied.

Subject Matter Jurisdiction

Choice One argues that since §252(e)(4)[6] of the TCA specifically bars state courts from reviewing approvals and rejections of ICAs submitted to a Public Service Commission ("PSC"), it should <u>by extension</u> bar state courts from interpreting any disputes over an ICA.  Also, since 252(e)(1)[7] grants PSC's the exclusive authority to approve and reject ICA's, it must follow that they are the initial forum that may adjudicate disputes regarding ICA's.

To support such a broad reading of a statute that would limit the general jurisdiction of a state trial courts, Choice One cites to several federal cases and an FCC decision.

Verizon New York argues that since 47 USC §252 is silent on the issue of whether PSCs are the only forum in which ICA disputes may be resolved, it would be a misreading of the TCA to hold otherwise, given the principle that federal statutes limiting state court jurisdiction are to be construed narrowly. Furthermore, it would be in contradiction to the explicit imperative in section 152 of the TCA, entitled "Application of Chapter," which states that "This Act...shall not be construed to modify, impair, or supersede...State...law unless expressly so provided in such Act..." 1996 Act § 601(c)(1), *reprinted at* 47

---

[6]  "No State court shall have jurisdiction to review the action of a State Commission in approving or rejecting an agreement under this section." 47 USC §252(e)(4).

[7]  "Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission..." 47 USC §252(e)(1).

USC §152 note (2006).

When faced with a question of who has the authority to interpret a federal statute the analysis must begin with the presumption that state courts have concurrent jurisdiction with Federal courts over federal claims. *Simpson Elec. Corp. v Leucadia, Inc.*, 72 NY2d 450, 455 (1998); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 US 473, 478 (1981).  However, this presumption of concurrent jurisdiction can be rebutted by "(a) an explicit statutory directive (b) unmistakable implication from legislative history or (c) clear incompatibility between State court jurisdiction and Federal interests." *Gulf Offshore Co.*, 453 US at 478.

As Choice One concedes, the statute does not explicitly state that state courts have been divested of their jurisdiction to hear ICA disputes.  The statute only provides that "In... any case in which a State commission makes a determination under this section [Section 252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 USC §252(e)(6).[8] The statute does not explicitly direct where an action regarding the interpretation of an ICA belongs, and is otherwise silent on the issue.

Several appeals courts have held that based on the language

_____

[8]   "The 'determination' referred to in section 252(e)(6)is mandated by section 252(e)(1)..." *Verizon II*, 499 F Supp 2d at 331 n39.

in 47 USC §252, state utility commissions do have the authority
to interpret and enforce interconnection agreements, however none
of these cases specifically addresses the issue of whether or not
state courts have been divested from adjudicating post formation
ICA disputes.  Rather these cases stand for the proposition that
federal courts may only review ICA cases to determine whether or
not the agreement meets the requirement of 47 USC §§ 251, 252.
These cases all make the argument that federal courts cannot go
beyond this mandate since they are courts of limited
jurisdiction. *Bell Atlantic Md., Inc., v MCI Worldcom, Inc.*, 240
F3d 279 (4th Cir 2001) *vacated on other grounds, Verizon Md.,
Inc. v Pub. Serv. Comm'n of Md.*, 535 US 635 (2002); *Southwestern
Bell v PUC of Texas*, 208 F3d 475, 480 (5th Cir 2000); *Ill. Bell
Tel. Co. v Worldcom Techs., Inc.*, 179 F3d 566 (7th Cir 1999); *US
West Communs., Inc., v Sprint Communs., L.P.*, 275 F3d 1241 (10th
Cir 2002).

      However, the cases that Choice One cites for the
proposition that this Court lacks concurrent jurisdiction over
post formation ICA disputes are not dispositive. *Contact
Communications v Qwest Corp.*, 246 F Supp 2d 1184, 1188 (D Wyo
2003) ("Congress has divided authority for enforcing the
obligations arising under the TCA between state PSCs and the
federal courts, leaving no role for state courts"); *Express
Telephone Servs. v Southwestern Bell*, 2002 WL 32360295 *6 (ND
Tex. Oct 16, 2002) ("Because the Court holds that the PUC [public
service commission] has exclusive, original jurisdiction to

interpret and enforce FTA interconnection agreements, and federal
district courts have exclusive jurisdiction to review those
decisions, jurisdiction of this dispute would never be proper in
state court); *Bell Atlantic Pennsylvania, Inc. v Pennsylvania
Public Utility Comm'n*, 295 F Supp 2d 529, 537-538 (ED Pa 2003),
("Congress made an explicit statutory directive conferring
exclusive federal jurisdiction over appeals from determinations
by [PUCs] pertaining to ICAs, not just appeals of the acceptance
or rejection of an ICA by a PUC.").

Instead, this Court finds more persuasive the reasoning of
*Illinois Bell Telephone Company v Worldcom Technologies, Inc.*,
179 F3d 566 (7th Cir 2000) ("Illinois Bell") and *Verizon New York
v Choice One Communications of New York, Inc.*, 499 F Supp 2d 326
(SDNY 2007) ("Verizon II"), especially in light of the Supreme
Court decision in *Verizon Maryland Inc., v Public Service
Commission of Maryland*, 535 US 635 (2002) ("Verizon Maryland").

In *Verizon Maryland*, the Supreme Court addressed the issue
of whether federal district courts have jurisdiction over
telecommunication carrier's claims that the order of a state
utility commission requiring reciprocal compensation for
telephone calls to Internet Service Providers violates federal
law. *Verizon Maryland*, 535 US at 638.

> "The determination at issue here is neither the approval or
> disapproval of a negotiated agreement nor the approval or
> disapproval of a statement of generally available terms.
> WorldCom, Verizon, and the United States argue, however,
> that a state commission's authority under §252 implicitly
> encompasses the authority to interpret and enforce an
> interconnection agreement that the commission has approved,
> and that an interpretation or enforcement decision is

10

therefore a determination under [§ 252] subject to federal review.  Whether the text of § 252(e)(6) can be so construed is a question we need not decide.  For we agree with the parties' alternative contention, that even if 252(e)(6) does not confer jurisdiction, it at least does not divest the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law."
*Id.*, 535 US at 641-42.

As the *Verizon Maryland* case makes clear, the Supreme Court has never decided the issue of whether 252(e)(6) confers exclusive jurisdiction on public service commissions to interpret interconnection agreements.  Rather, federal court jurisdiction over PSC determinations stems from 28 USC §1331, federal question jurisdiction, and therefore limits the federal court's jurisdiction to federal questions only.

In *Illinois Bell*, the Court was confronted with the issue of whether or not an Illinois Commerce Commission ruling regarding reciprocal compensation for telephone connections to Internet service providers violated federal law.  With regard to claims that arose under state law, the Court held that:

"Lest there be any misunderstanding about what this conclusion means, we add that any issues of state law remain open for determination in the proper forum.  Section 252(e)(6) authorizes a federal court to determine whether the agency's decision departs from federal law.  A decision "interpreting" an agreement contrary to its terms creates a different kind of problem - one under the law of contracts, and therefore one for which a state forum can supply a remedy."
*Illinois Bell*, 179 F3d at 574.

As the court in *Verizon II* held, federal question jurisdiction is not automatically invoked just because a dispute deals with an ICA.  The Court based its ruling in part on reasoning found in *Verizon Maryland, Inc. v. Global NAPS, Inc.*,

11

377 F3d 355 (4th Cir 2004) ("Global Naps"), which was an appeal
from the district court case that was remanded from the Supreme
Court in *Verizon Maryland*.

After the remand, the District Court bifurcated Verizon
Maryland's first claim into two parts: (1) a violation of federal
law claim and (2) a contract misinterpretation claim. *Verizon
Maryland Inc., v RCN Telecom Services, Inc.*, 232 F Supp 2d 539,
(D MD 2002)("RCN Telecom"). The District Court dismissed the
contract misinterpretation claim for lack of subject matter
jurisdiction and Verizon Maryland appealed. On Appeal, the
Fourth Circuit held that "[W]hen there is a claim that a state
utility commission has misinterpreted an interconnection
agreement provision that implements a duty imposed by the Act,
review should be available under § 1331 in district court."
*Global Naps*, 377 F3d at 366. However, the Fourth Circuit also
made clear that not every ICA dispute belonged in federal court.
*Id*. ("We are not saying that every dispute about a term in an
interconnection agreement belongs in federal court, but when the
contractual dispute (like the one here) involves one of the 1996
Act's essential duties, there is a federal question.").

As the Fourth, Seventh, and Second Circuits make clear, the
scheme developed by the TCA does not divest state courts of its
jurisdiction over all ICA disputes. Rather, the inquiry will
focus on whether the dispute implicates a federal question or a
state law question.

As the Court held in *Verizon II*, the dispute between Verizon

12

New York and Choice One is not one that implicates federal law, and therefore the Court could not adjudicate the dispute because it lacked subject matter jurisdiction. *Verizon II*, 499 F Supp 2d at 339. ("There is no statute here granting federal court jurisdiction over the parties' dispute concerning a contractual provision that has nothing to do with goals and purposes of the act. Simply because the contractual provision in dispute is found in an interconnection agreement does not mean that the matter belongs in federal court. Rather, the inescapable conclusion is that this Court does not have jurisdiction over this state law contract case...").

The Seventh Circuit noted in *Illinois Bell* that the allocation between federal courts and state forums has a potential to cause problems, but until the legislature repairs it, then this system will exist. *Illinois Bell*, 179 F3d at 574 ("Thus every time a carrier complains about a state agency's action concerning an agreement, it must start in federal (to find out whether there has been a violation of federal law) and then may move to state court if the first suit yields the answer 'no.'").

In this case, the federal district court has ruled that it cannot adjudicate the dispute, and now the question is whether the dispute must go to the NY PSC or come to this Court.

**Exhaustion of Remedies**

On a motion to dismiss, pursuant to CPLR 3211(a)(7), the Court should liberally construe the complaint, presume the facts

13

to be true, and accord the pleading the benefit of every possible favorable inference. *Rivietz v Wolohojian*, 38 AD3d 301 (1st Dep't 2007). However, if there is documentary evidence that flatly contradicts the legal conclusions and factual allegations, then they are not to be presumed as true or accorded every favorable inference. *Id*.

In this case Choice One argues that the plain language of 47 USC §252(e)(6) which mandates that state PSC's initially accept or reject an ICA entered by a CLEC and an ILEC, with review in federal court possible only after the PSC has ruled, has been interpreted by Courts to mean that all initial determinations regarding ICA's must go to PSC's. ("The exhaustion of remedies requirement in 47 USC §252(e)(6)is not limited to circumstances involving the acceptance or rejection of an ICA agreed upon by an ILEC [Verizon] and CLEC [Choice One]. Federal Courts have also uniformly interpreted 47 USC §252(e)(6) to mean that State PSCs are...charged with making the initial determination of any disputes between parties...") (Choice One Federal Memo in Support of Motion to Dismiss at 6).

Furthermore, Choice One argues that the FCC held that the specific language in the ICA dispute resolution clause does not overcome the exhaustion of remedies requirement imposed by the Federal Act. *In the Matter of Starpower Communications, LLC.*, 15 FCCR 11277 (2000) ("Starpower").

Verizon New York first makes the implicit argument that since the Telecommunications Act is silent on an exhaustion

14

requirement, ruling that an exhaustion requirement exists would render the FCC opinion in *Starpower Communications* moot because the FCC, which has been given authority to render opinions on the TCA where the Act is silent, held that private parties could contract a forum for dispute resolution. ("The terms of the contract are consistent with the FCC's ruling that competing telephone companies can agree that they will bring disputes about [ICAs] directly to court, bypassing the state regulatory commission entirely.") (Verizon New York's Reply Memorandum at 5) ("Verizon's Reply Memo").

In the alternative, Verizon New York argues that even if the Court finds an exhaustion requirement, the parties contracted around the issue and provided the option of bringing disputes arising under the contract to state court.

It is a well known canon of statutory construction that where a statute is silent on a subject, and an administrative agency has been given authority to administer a statute, the agency's interpretation of the statute is entitled deference. *Chevron, USA., Inc. v Natural Res. Def. Council*, 467 US 837, 843; *333 East 49th Associates LP v New York State Division of Housing and Community Renewal*, 40 AD3d 516 (1st Dep't 2007)("The administrative agency charged with enforcing a statutory mandate has broad discretion... and its interpretation will be upheld so long as not irrational or unreasonable.").

The FCC has been given congressional authority to implement the requirements of the TCA, and therefore its interpretation of

15

the TCA is given due deference.  *AT&T Corp. v Iowa Utilities Bd.*,
525 US 366, 378 (1999).

The FCC in *Starpower* was ruling on a petition by Starpower
Communications for preemption of the jurisdiction of the Virginia
State Corporation Commission to decide a dispute concerning the
interpretation and enforcement of its interconnection agreement
with Bell Atlantic Virginia, Inc., and GTE South, Inc.  Under
Section 252(e)(5) of the TCA, the FCC may preempt the
jurisdiction of a state commission in any proceeding or matter in
which the state commission fails to carry out its responsibility
under section 252.

The FCC first analyzed the issue of whether or not a dispute
arising from an interpretation of an ICA post formation falls
within the purview of the PSCs.  The FCC held in the affirmative
based on two Court of Appeals cases, *Southwestern Bell Telephone,*
208 F3d 475, *supra* pg.9 and *Illinois Bell,* 179 F3d 566, *supra* pg.
10.  Both of these cases arose before the Supreme Court decision
in *Verizon Maryland* which did not explicitly rule on the issue of
whether PSC's have the authority under 47 USC §252(e)(6) to
interpret and enforce ICA's, but rather held that federal court's
have assumed jurisdiction over ICA disputes based on federal
question jurisdiction.

Even if we assume that Congress implicitly gave PSC's the
right to adjudicate such disputes, without an explicit grant of
such authority, the FCC's *Starpower* opinion which is based on
cases that read 47 USC §252(e)(6) broadly, specifically notes

16

that "a state commission's failure to 'act to carry out its responsibility' under section 252 can in *some* circumstances include failure to interpret and enforce agreements. In the footnote qualifying "some," the FCC advises that "in other circumstances, parties may be bound by dispute resolution clauses in their interconnection agreement to seek relief in particular fashion, and therefore, the state commission would have no responsibility under <u>section 252</u> to interpret and enforce an existing agreement." *Starpower*, 15 FCCR at 11282, n14.

In this case, the Original ICA between Verizon New York and Choice One contains a Dispute Resolution Clause and Disputed Amount Clause that moots the issue of where ICA disputes need to be adjudicated in the absence of a dispute resolution clause, which the Court refrains from deciding, since that is not an issue in this case. *Verizon New York Inc*. v *Broadview*, 781 NYS2d 211, 214 ("Broadview") (The case concerned the application of an arbitration provision between two parties to an ICA).

This case is similar to *Broadview* in that both defendants opted into ICA agreements pursuant to 47 USC §252(i), and both defendants argued that the contract's dispute resolution should not apply because the parties had not exhausted their remedies. In *Broadview*, defendant Broadview argued in its affirmative defense that the FCC was the "appropriate forum" for resolution of the parties' dispute because "[t]he interpretation of federal tariffs and the Communications Act, and their application, is a matter over which the FCC has particular expertise, such that the

17

primary jurisdiction of the FCC to resolve the dispute is not in question." *Id*. at 217.  The Court held that *Broadview* failed to carry its burden on proving its affirmative defense.  Choice One has also failed to carry its burden on its affirmative defense that the law and the contract require this dispute to be adjudicated before a PSC.

The operative provisions of the ICA that are germane to this case fall under Section 30, entitled "Miscellaneous."

Section 30.12(c), the disputed amount clause, states that:

"If the parties are unable to resolve the issues related to the Disputed Amounts within forty-five(45)days after referral of the dispute pursuant to Section 30.11 of this Agreement, then either party may file a complaint with the commission to resolve such issues or proceed with any other remedy pursuant to law or equity." Interconnection Agreement §30.12.

Section 30.11, the dispute resolution clause, provides that:

"The parties agree that in the event of a default or violation hereunder, or for any dispute arising under this Agreement over which the PSC [NY PSC] or FCC would otherwise have jurisdiction, such disputes shall be resolved in accordance with this Section.  The Parties shall first discuss the dispute and seek resolution prior to taking any action before any court or regulator...if the parties are unable to resolve issues related to a dispute within thirty (30) days after the Parties appointment of designated representatives as set forth above, then the dispute may be submitted for resolution to the Commission or, if applicable, the FCC. In the event the commission shall elect not to exercise its jurisdiction over the Parties dispute, the Parties agree to resolve the dispute in accordance with Section 30.7. *Id*. §30.11.

Section 30.7, entitled "Governing Law," provides that:

"The validity of this Agreement, the construction and enforcement of its terms, and the interpretation of the rights and duties of the Parties shall be governed by the laws of the State of New York other than as to conflict of laws, except insofar as federal law may control any aspect

18

of this Agreement, in which case federal law shall govern
such aspect."
*Id.* §30.7.

The contract clause that is dispositive in this case is
Section 30.12(c), the disputed amount clause.  As the clause
makes clear, the parties were to be given an extra fifteen days,
on top of the thirty days mandated by section 30.11, to workout
the disagreements between themselves, and if parties were not
able to resolve their dispute, then the default regime of dispute
resolution in Section §30.11 was to apply.  Section 30.11 states
that "if the parties are unable to resolve issues related to a
dispute...then the dispute may be submitted for resolution to the
Commission, or if applicable the FCC.  In the event the
Commission shall not elect to exercise its jurisdiction over the
Parties' dispute, the Parties agree to resolve the dispute in
accordance with 30.7." §30.11, *supra* pg.19.

The dispute resolution clause makes clear that the parties
envisioned a role for both the NY PSC and state courts.  Since
both parties have made the argument that the contract resolution
clause is dispositive, in giving the pleadings the most favorable
reading, it is possible to read the contract such that it denies
the NY PSC jurisdiction over the dispute, and therefore that
branch of Choice One's motion to dismiss for failure to state a
cause action due to Verizon's failure to exhaust necessary
administrative remedies is denied.

Accordingly, it is

ORDERED that Choice One Communications of New York's motion

19

to dismiss is denied; and it is further

ORDERED that the plaintiff and defendant appear for a status conference on 1/14/2008 via telephonic conference initiated by plaintiff at 4:15 pm. Plaintiff can call chambers at 636-386-3229.

This shall constitute the Decision and Order of this Court.

Dated: December 20, 2007

J.S.C.

HON. CHARLES E. RAMOS

Counsel are hereby directed to obtain an accurate copy of this Court's opinion from the record room and not to rely on decisions obtained from the internet which have been altered in the scanning process.