UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ONE COMMUNICATIONS CORP. </br></br></br></br></br></br>This Document Relates To: Both Actions | MASTER FILE</br>07 Civ. 3905 (LTS)(AJP) |

PLAINTIFF'S SUR-REPLY MEMORANDUM
IN OPPOSITION TO MOTIONS TO DISMISS

 

John M. Teitler (JT-3111)
Nicholas W. Lobenthal (NL-1451)
TEITLER & TEITLER
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 997-4400
Facsimile: (212) 997-4949
jmteitler@teitler.com
nwlobenthal@teitler.com

Attorneys for Plaintiff
One Communications Corp.

Of Counsel:

Mark S. Resnick, Esq., *Pro Hac Vice*
THE RESNICK LAW GROUP, P.C.
Old City Hall
45 School Street
Boston, MA  02108

# TABLE OF AUTHORITIES

*Andrae v. Andrea*, 1992 WL 43924 (Del. Ch. Mar. 3, 1992) ............................ 2

*Citibank, N.A. v. Itochu Int'l, Inc.*, 2003 WL 1797847 (S.D.N.Y. 2003) ................... 3

*In re Global Crossing, Ltd., Sec. Litig.*, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005) .......... 2

*McMahan & Co. v. Wherehouse Enter., Inc.*, 65 F.3d 1044 (2d Cir. 1995) ................. 3

*In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547 (S.D.N.Y. 2007) ........................ 3

*Polycast Tech. Corp. v. Uniroyal*, 792 F. Supp. 244 (S.D.N.Y. 1992) ..................... 3

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761 (2008) ..... 1, 2

*Suez Equity Investors, L.P. v. Toronto-Dominion Bk.*, 250 F.3d 87 (2d Cir. 2001) ........... 3

15 U.S.C. §§ 77n, 78cc(a) ................................................... 3

17 C.F.R. § 240.10b-5(a) & (c) ............................................... 3

In *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 766-67 (2008), the Supreme Court held that investors who "did not rely upon [defendants'] statements or representations" cannot state a claim against parties who "had no role in preparing or disseminating" allegedly false statements. There, the allegedly deceptive acts "were not disclosed to the investing public". *Id.* at 770. Indeed, the defendants there were not even operating "in the investment sphere". *Id.* at 774.

The claims in *Stoneridge* are a far cry from the claims in this case. JP Morgan's and Megunticook's liability is predicated on their own actions upon which Plaintiff relied. Their role in negotiating the sale was known to Plaintiff and their ratification of the post-closing representations at issue was critical to Plaintiff: since Lightship was ceasing to exist as an independent entity after the closing, the representations had to be and were, in reality, JP Morgan's and Megunticook's own. *See* Robinson Aff. Ex. 1 (Merger Agreement) § 8(b) (indemnification by Holding Stockholders); *see* Pl. Opp. 39-40 (they controlled the negotiation as made clear by the emails; caused Lightship to enter into the Merger Agreement; and ratified the Merger Agreement through the Voting Agreement as a condition of sale).[1] Accordingly, JP Morgan and Megunticook were the true authors of the misrepresentations.

JP Morgan and Megunticook seek to vitiate the reliance that *Stoneridge* found significant by disowning Oppenheimer and Matlack as their agents. They contend that Oppenheimer and Matlack were not understood by Plaintiff to be, and were not, acting on behalf of their employers when they negotiated the sale of their employers' ownerships in Lightship to

---

[1] Together, JP Morgan and Megunticook owned over 75 percent. Lobenthal Decl. Ex. B (Voting Agreement), Sched. 1; Robinson Aff. Ex. 8 at 26. Their representatives were involved directly in every aspect of the sale. *E.g.*, Compl. ¶¶ 70-71.

1

Plaintiff. *See* JP Morgan Reply 5-6, *citing In re Global Crossing, Ltd., Sec. Litig.*, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005); *see also* Megunticook Reply at 2 n.4.[2]

In *Global Crossing*, there was no "extraordinary transaction[]" and hence nothing that had a unique impact on the directors' employers. *Id.* at *9. This transaction, by contrast, involved the sale of 100 percent of JP Morgan's and Megunticook's respective interests in Lightship. In *Global Crossing*, there were no allegations that the directors were acting on behalf of their employers. In this transaction, by contrast, Oppenheimer and Matlack had actual and apparent authority to represent their employers and were clearly acting within the scope of their employment. *E.g.*, Compl. ¶ 71. Oppenheimer executed the Stockholder Representative Agreement on behalf of "Holding Stockholder" JP Morgan as a "Principal" of J.P. Morgan SBIC LLC. Lobenthal Decl. Ex. C. Matlack executed the Confidentiality Agreement on behalf of Megunticook. *Id.* Ex. D. Both Oppenheimer and Matlack used their employers' email accounts to correspond with Plaintiff. Robinson Aff. Exs. 10 & 11.

In contrast to *Stoneridge* and *Global Crossing*, the selling shareholder Defendants here were the primary actors and parties in interest; Lightship was to cease to exist as an independent entity. Contrary to the notion that the "directors" were solely serving Lightship and not their respective employers, they negotiated against one another regarding their respective employers' compensation and post-closing obligations – and those significant differences between JP Morgan and Megunticook are reflected in the final transaction documents. Robinson

---

[2] The Delaware case cited in *Global Crossing, Andrae v. Andrea*, 1992 WL 43924 at *5 (Del. Ch. Mar. 3, 1992), makes clear that there is no bright line test for independence. Nothing therein precludes Oppenheimer and Matlack from having dual allegiances to both Lightship and their respective employers.

2

Aff. Ex. 1 (Merger Agreement) Sched. 2(d)(v) (allocation of payments); §§ 8(b)(f) (different indemnification obligations); *see also* Megunticook Reply 14-15 (arguing that Megunticook, unlike other Holding Stockholders, did not intend to have any post-closing obligation).[3]

On these facts, JP Morgan's and Megunticook's liabilities are well-pleaded. *See, e.g., Suez Equity Investors, L.P. v. Toronto-Dominion Bk.*, 250 F.3d 87, 101 (2d Cir. 2001) (corporation acts through employees and agents); *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 551-52 (S.D.N.Y. 2007) (*respondeat superior* liability); *Polycast Tech. Corp. v. Uniroyal*, 792 F. Supp. 244, 258-59 (S.D.N.Y. 1992) (liability predicated on actions of employees of corporate defendant). Because there are ample allegations against JP Morgan and Megunticook, even after *Stoneridge*, the "device, scheme, or artifice to defraud" (17 C.F.R. § 240.10b-5(a) & (c)) specifically alleged here is actionable. *See* Plaintiff's Opposition at 73-75.

Dated: New York, NY
March 12, 2008

                                      TEITLER & TEITLER

                                      By   s/ Nicholas W. Lobenthal
                                            John M. Teitler (JT-3111)
                                            Nicholas W. Lobenthal (NL-1451)

---

[3] In its Reply at 2, JP Morgan also cites to a provision in the Merger Agreement precluding individual liability of Executive Officers in certain limited circumstances as further evidence of lack of reliance. It is axiomatic that a party cannot contractually immunize itself from liability under the Federal securities laws. 15 U.S.C. §§ 77n, 78cc(a); *McMahan & Co. v. Wherehouse Enter., Inc.*, 65 F.3d 1044, 1051 (2d Cir. 1995); *Citibank, N.A. v. Itochu Int'l, Inc.*, 2003 WL 1797847 (S.D.N.Y. 2003). Further, Oppenheimer and Matlack were not "Executive Officers" and the limited circumstances have no bearing on the facts alleged in the Complaint. Finally, the argument confuses the issues of personal liability and *respondeat superior* and for that reason has been squarely rejected. *In re Parmalat*, 474 F. Supp. 2d at 552.